IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

SANDRA M. PORTER,         )
                                    )
        Plaintiff,       )
                                    )
v.                       )     Civil No. 1:09-cv-446
                                    )
ELK REMODELING, INC.,      )
                                    )
        Defendant.    )

## MEMORANDUM OPINION

This matter comes before the Court on Plaintiff's Motion for Attorneys' Fees (Dkt. No. 97) and Plaintiff's Declaration in Support of Sanctions (Dkt. No. 90). After review of Plaintiff's Motion and because Defendant did not file an opposition, the Court dispensed with oral argument and now issues this opinion.

## I.    Background

This motion for attorneys' fees and expenses arises out of an ERISA section 510 retaliation claim, 29 U.S.C. § 1140, and a Virginia Human Rights Act ("VHRA") claim.[1] The parties consented to judgment as to liability in favor of Plaintiff. On June 14, 2010 a bench trial was held to determine damages in the case. Subsequently, Plaintiff moved for fees and expenses under 29 U.S.C. § 1132(g)(1)[2] which provides that a district court may, in its discretion award costs and reasonable attorneys' fees to either party, so long as that party has achieved "'some degree of success on the merits.'" *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 634 (4th Cir.

---

[1] The First Amended Complaint contained three other claims which were all dismissed on summary judgment.
[2] Plaintiff is also entitled to attorneys' fees under Va. Code § 2.2-2639(c); however, such fees are limited to "25 percent of the back pay award." Because there is no such limitation to an award of attorneys' fees under ERISA, Plaintiff has chosen to file her motion for attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g)(1).

2010) (quoting *Hardt v. Reliance Std. Life Ins. Co.*, --- U.S. ----, 130 S.Ct. 2149 (2010)). In addition to seeking general litigation fees, Plaintiff also seeks fees and costs associated with her Motion for Sanctions which the Court granted.

## II.    Analysis

### a.    Attorneys' Fees in an ERISA Action

As stated above, in an ERISA action, a district court may, in its discretion award costs and reasonable attorneys' fees to either party under 29 U.S.C. § 1132(g)(1), so long as that party has achieved "some degree of success on the merits." *Metro. Life Ins. Co.*, 609 F.3d at 634. Under a test established by the Fourth Circuit, the first step then is to determine whether the party requesting attorneys' fees has achieved "some degree of success on the merits." *Id.* In this case, the parties stipulated to judgment in favor Plaintiff. After a trial as to damages, the Judge awarded Plaintiff $49,988.90. Given that Plaintiff prevailed in the case, she clearly reached the threshold bar of achieving "some success on the merits."

Because Plaintiff is eligible for an award of attorneys' fees, the Court must next decide whether it should exercise its discretion and award fees. *Id.* at 635. In deciding whether to award attorneys' fees, the Court must consider that even a successful party such as Porter does not enjoy a presumption in favor of attorneys' fees award. *See Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1029 (4th Cir. 1993) (en banc). In *Quesinberry*, the Fourth Circuit identified five factors that a district court should consider in informing its exercise of discretion when ruling on a motion for attorneys' fees in an ERISA case. *Id.* These factors include:

(1) degree of opposing parties' culpability or bad faith;
(2) ability of opposing parties to satisfy an award of attorneys' fees;
(3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances;

2

(4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself;

(5) the relative merits of the parties' positions.

*Id.* The court in *Quesinberry* cautioned that this five-factor approach is not a "rigid test," but instead provides "general guidelines." *Id.*

While the Court in *Quesinberry* made clear that there is no presumption of attorneys' fees given to a prevailing insured or beneficiary, they also stated that in deciding whether to exercise its discretion under the statute, a court "must . . . bear in mind the remedial purposes of ERISA to protect employee rights and to secure effective access to federal courts. As such, "a prevailing individual beneficiary 'should ordinarily recover attorneys' fees unless special circumstances would render such an award unjust.'" *Id* (internal citations omitted).

As to factor 1, the Court finds that Defendant Elk Remodeling's degree of culpability in this case was high. In the Joint Motion for Entry of Judgment as to Liability, Defendant admitted to all facts alleged in the First Amended Complaint and specifically to "unlawfully discharging and discriminating against Plaintiff with the specific intent to harm and interfere with her attainment of any rights to which she may have been entitled under the plan." Joint Motion for Entry of Judgment as to Liability, p.1. Put another way, Defendant intentionally denied Plaintiff's right to participate in the plan because including her in the coverage would be too expensive to Elk Remodeling. Defendant also admitted to denying her access to coverage under the plan because of her sex. *Id.* at 2. For these reasons, factor 1 clearly favors awarding attorneys' fees.

The second factor is the only one which the Court finds does not favor awarding attorneys' fees. When the suit was originally filed, Timothy Shellnut, CEO and sold shareholder of Elk Remodeling, and his wife, Claudia Shellnut, were named as defendants. On March 12,

2010 a suggestion of bankruptcy was filed by Timothy and Claudia Shellnut, and the case was stayed as to them pending the resolution of the bankruptcy proceedings. On August 17, 2010, after judgment was entered against Defendant, a suggestion of bankruptcy was filed by Elk Remodeling. It therefore appears to the Court that Defendant would likely be unable to pay any attorneys' fees awarded to Plaintiff.

With regard to the third factor, it seems only common sense to the Court that an award of attorneys' fees against Defendant would further deter employers from terminating employees in order to avoid covering them under an ERISA plan.

With regard to the fourth factor, Plaintiff did not seek to benefit all similarly situated participants or beneficiaries because she was the only one whom Defendant discriminated against by denying coverage under the plan. However, while Plaintiff did not seek to benefit similarly situated participants or beneficiaries, Plaintiff did seek to resolve a significant legal question not widely addressed in this District: at what point can an employee benefit plan be considered "established" within the meaning of 29 U.S.C. § 1002. Consideration of this factor, therefore weighs in favor of awarding attorneys' fees.

With regard to the last factor, the strength of Plaintiff's case is evidenced by the fact that Defendant conceded the validity of all facts alleged in the First Amended Complaint. While some of the original counts were dismissed because of statute of limitations and preemption issues, the overall claim that Plaintiff was terminated in order to prevent her from participating in Defendant's health insurance plan was very strong.

Because all but one of the *Quesinberry* factors weighs in favor of granting attorneys' fees, the Court finds that granting attorneys' fees is appropriate.

      b.        **Reasonableness of the Fees Sought**

After deciding that attorneys' fees are appropriate in this case, the Court must now determine whether the fees sought by Plaintiff are reasonable. 42 U.S.C. § 1988; *Robinson v. Equifax Info. Servs.*, 560 F.3d 235, 243 (4th Cir. 2009). "In calculating an award of attorney's fees, a court must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Id.* (citing *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008)). In deciding what constitutes a 'reasonable' number of hours and rate, the Fourth Circuit has instructed that a district court's discretion should be guided by the following twelve factors[3]:

> (1) the time and labor expended;
> (2) the novelty and difficulty of the questions raised;
> (3) the skill required to properly perform the legal services rendered;
> (4) the attorney's opportunity costs in pressing the instant litigation;
> (5) the customary fee for like work;
> (6) the attorney's expectations at the outset of the litigation;
> (7) the time limitations imposed by the client or circumstances;
> (8) the amount in controversy and the results obtained;
> (9) the experience, reputation and ability of the attorney;
> (10) the undesirability of the case within the legal community in which the suit arose;
> (11) the nature and length of the professional relationship between attorney and client; and
> (12) attorneys' fees awards in similar cases.

*Robinson*, 560 F.3d at 243-44 (citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir.1978) (adopting the twelve factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714)).[4] The Court will therefore consider these factors to determine (1) the reasonable number of hours and (2) the reasonable rate to be used in this case to determine whether the fees

---

[3] Because these twelve factors were first laid out by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989), they are often referred to as the "*Johnson* factors."

[4] In addition to these factors, an opposing party's ability to pay also has a bearing on a Court's fee assessment. *Chaplin v. DuPont Advance Fiber Sys.*, 303 F.Supp.2d. 766, 775-76 (E.D. Va. 2004). The Court keeps this additional factor in mind as it proceeds with its review of Defendants' fee request.

charged by Plaintiff's attorney John Ates are appropriate. *Aventis Cropscience, N.V. v. Pioneer Hi-Bred Int'l, Inc.*, 2010 WL 2306677 at *5 (M.D.N.C. June 8, 2010).[5]

Plaintiff seeks to recover fees paid to Ates Law Firm PC ("ALF"). In support of her motion for attorneys' fees, Plaintiff submitted a declaration from John R. Ates as well as declarations from Patricia A. Smith and John F. Scalia. Patricia Smith practices in the Northern Virginia and Washington, DC areas, and is the founder of the law firm Law Offices of Patricia A. Smith. She has more than twenty-four years of ERISA and employment law experience. John Scalia is a shareholder at the law firm of Greenberg Taurig LLP which has an office in Tysons Corner, Virginia. He practices in the firm's Labor and Employment and Litigation Practice Groups.

*i. Analysis of Johnson Factors*

(1) The time and labor required:

At its core this was a discrimination case, but one whose causes of action were based on ERISA and state law.[6] While the case did not involve an overwhelming number of documents or amount or discovery, Plaintiff had to increase the number of hours spent on the case because of actions taken by Defendant, such as denying certain matters alleged in the First Amended Complaint (which Defendant subsequently admitted were true) and by denying certain requests for admissions (which Defendant also subsequently admitted were true). Further, Plaintiff was

---

[5] In a recent decision, the Supreme Court in *Perdue v. Kenny A.*, 130 S. Ct. 1662 (2010) held that to the extent the *Johnson* factors are viewed as an alternative to the lodestar method, the lodestar remains the proper method for calculating attorneys' fees. *Id.* at 1672. The Supreme Court further noted that "the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee," *id* (quoting *Pennsylvania v. Delaware Valley Citizens' Counsel of Clean Air*, 478 U.S. 546, 566 (1986)), and that therefore these factors are subsumed in the lodestar calculation, *see id.* (citing *Burlington v. Dague*, 505 U.S. 557, 562 (1992)). As such, the Court will consider the relevant *Johnson* factors only within the context of determining a reasonable number of hours and reasonable rate for the purposes of the lodestar calculation. *Aventis*, 2010 WL 230677 at *5.
[6] The First Amended Complaint also contained two claims brought under Title VII which Plaintiff voluntarily dismissed at the summary judgment stage.

required to prepare completely for trial as Defendant did not admit liability until the last business day before the trial was scheduled to begin.

Mr. Ates states in his declaration that ALF spent a total of 310.31 hours prosecuting the case (34.73 hours were before October 1, 2009, and 275.58 were after October 1, 2009). In his request for attorneys' fees, Plaintiff has excluded the time spent on issues related to the sanctionable offense (these costs are covered separately) as well as time spent on the Title VII and state law retaliation/wrongful discharge claims which were dismissed on summary judgment.

As such, the Court finds that this factor supports the reasonableness of the hours expended by Plaintiff's attorney and the corresponding billing rates established below.


(2) <u>The novelty and difficulty of the questions</u>:

As mentioned previously, this was a discrimination case that involved an understanding of state law claims as well as ERISA causes of action. While asserting a claim for discrimination under both the VHRA and ERISA's retaliation provisions is not enormously complex, ERISA, in particular, is a very complicated statute, and understanding its intricacies usually requires specialization in the field. This case specifically dealt with some issues which have not been widely addressed in the Fourth Circuit, or any circuit for that matter. In particular, this case raised questions regarding at what point a plan is "established" within the meaning of 29 U.S.C. § 1002. As such, this factor supports the reasonableness of the hours expended by Plaintiff's counsel and the corresponding billing rates established below.


(3) <u>The skill required to properly perform the legal services rendered</u>:

The substantive issues presented in this case called for an attorney with a background in employment law, and more specifically, in ERISA litigation. ALF concentrates its practice in employment law and related matters, and the Court finds that its specialization was of particular importance in this case. As noted in his declaration, Mr. Ates has extensive trial and appellate experience, including litigating complex civil matters as well as arguing appeals before the United States Supreme Court. As such, this factor supports the reasonableness of the hours expended by Plaintiff's counsel and the corresponding billing rates established below.

(4) The attorney's opportunity costs in pressing the instant litigation:

In his declaration, Mr. Ates' explains that had his firm not spent its time and resources prosecuting Ms. Porter's claims, it would have spent its time and resources on other compensable cases, the majority of which would have paid full hourly rates (as opposed to Ms. Porter's case which was taken on a contingent fee basis). ALF had to put significant time and resources into supporting and defending motions in this case as well as preparing for trial, which in turn precluded the firm from taking work for which it would have been able to charge its full hourly rates. As such, this factor supports the reasonableness of the hours expended by Plaintiff's counsel and the corresponding billing rates established below.

(5) The customary fee for like work:

Plaintiff seeks an award of fees at the rate of $400 per hour for the hours incurred prior to October 1, 2009, and at the rate of $420 per hour for the hours incurred on October 1, 2009 and subsequently.

In order to carry its burden on this factor, Plaintiff must present the Court with adequate evidence of the prevailing rates in the relevant market. *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990). "In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." *Id.* (internal citations and quotation marks omitted). As the Fourth Circuit reaffirmed in *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169 (4th Cir. 1994), "[t]he relevant market for determining the prevailing rate is ordinarily the community in which the court where the action is prosecuted sits." *Id.* at 175 (citing *Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313, 317 (4th Cir. 1988)).[7]

In support of its motion, Plaintiff relies on the following sources of support for the rates asserted: 1) declaration by John R. Ates; 2) declarations by other attorneys who practice in the same field; 3) the "Laffey Matrix."[8]

As noted, merely relying upon an attorney's own affidavit is insufficient to establish an acceptable market rate for attorneys' fees under this factor. However, the Court does look to the rates an attorney has charged in the past and information in the affidavits regarding his relevant experience as helpful information at the outset of this inquiry. Among the additional accepted types of evidence which are satisfactory to establish the prevailing market rates are "affidavits of other local lawyers who are familiar with the skills of the fee applicants and more generally with the type of work in the relevant community." *Robinson*, 560 F.3d at 245. Toward that end, Plaintiff submitted declarations of Patricia Smith and John Scalia.

---

[7] Though the Fourth Circuit also noted that rates from other markets may be considered when a case is of such complexity or difficulty that no adequate local counsel is available, indicating that the party's choice of an out-of-market attorney was reasonable. *Id.*

[8] The "Laffey Matrix," is a statement of market attorneys' fee rates for the Washington-Baltimore area published and periodically updated by the United States Attorney's Office for the District of Columbia. *See Robinson*, 560 F.3d at 244. The Laffey Matrix "is not binding upon the United States District Court for the Eastern District of Virginia," *Robinson*, 560 F.3d at 244 (citations omitted), but can provide a useful cross reference for the Court.

Ms. Smith's firm specializes in ERISA, employment discrimination, retaliation, Fair Labor Standards Act, and civil rights law. Ms. Smith has direct experience with the fee rates in Northern Virginia as well as in Washington, DC and the surrounding area. According to her, "[o]ver the years, [she has] endeavored to remain familiar with the then-current market rates for complex litigation in the Eastern District of Virginia, Alexandria Division, the District of Columbia and the greater Washington, D.C. metropolitan area." Motion to Attorneys' Fees, Ex. 2. As mentioned previously, Ms. Smith has twenty-four years of experience in the areas of ERISA and employment law litigation, and she charges $450 per hour. Her previous rate was $400 per hour. According to Ms. Smith, "the hourly rate [Mr. Ates] charges of $420 per hour is well within the market rate for any attorney of his experience." *Id.* She further states that she believes his "rate to be within the market rate per hour prevailing in the Eastern District of Virginia, Alexandria, Division, legal community for similar work performed by lawyers with the same level of experience as Mr. Ates." *Id.*

The declaration by Mr. Scalia which Plaintiff submitted is from another case in the Eastern District of Virginia, Alexandria Division. The declaration was initially submitted by Mr. Scalia on May 20, 2009. As noted, Mr. Scalia is a shareholder in the Labor and Employment and Litigation Practice Groups of Greenberg Taurig LLP which has offices in Tysons Corner, Virginia. In his declaration, Mr. Scalia discusses the rates of two attorneys, Matthew Sorenson and Virginia E. Robinson, who worked on the particular matter at issue. Mr. Sorenson, who had been practicing for five years, had a billing rate of $350 per hour. Ms. Robinson, who had been practicing for three years, had a billing rate of $260 per hour. Mr. Scalia states in the declaration that the rates of the attorneys are "at or below the rates charges by attorneys of similar skill and

experience in similar sized firms in Tysons Corner, Virginia and Washington DC." Motion to Attorneys' Fees, Ex. 3.

As noted, the relevant market for determining the appropriate prevailing rate for fees is the "community in which the court where the action is prosecuted sits," *Rum Creek*, 31 F. 3d at 175, indicating to the Court that greater emphasis should be placed on the prevailing rates specifically in Northern Virginia rather than then entire Washington metropolitan area. In doing so, "courts in this district have repeatedly recognized that hourly rates charged in Washington, D.C. are usually higher than hourly rates charged in the Eastern District of Virginia." *Jackson*, 2009 WL 1321506 at *3 (citing *Am. Canoe Ass'n v. EPA*, 138 F.Supp.2d 722, 740-42 (E.D. Va.2001)).

Finally, regarding the Laffey Matrix, there are actually two Laffey Matrixes in existence, one published by the United States Attorney's Office for the District of Columbia and one known as the "Adjusted Laffey Matrix."[9] The two Matrixes are provided below:

"Unadjusted" Laffey Matrix

|  | Years | 03-04 | 04-05 | 05-06 | 06-07 | 07-08 | 08-09 | 09-10 |
|---|---|---|---|---|---|---|---|---|
| Experience |  |  |  |  |  |  |  |  |
| 20+ years |  | 380 | 390 | 405 | 425 | 440 | 465 | 475 |
| 11-19 years |  | 335 | 345 | 360 | 375 | 390 | 410 | 420 |
| 8-10 years |  | 270 | 280 | 290 | 305 | 315 | 330 | 420 |
| 4-7 years |  | 220 | 225 | 235 | 245 | 255 | 270 |  |
| 1-3 years |  | 180 | 185 | 195 | 205 | 215 | 225 |  |

---

[9] The Court will refer to the former as the "Unadjusted" Laffey Matrix and the latter as the "Adjusted" Laffey Matrix.

| Paralegals & Law Clerks | | 105 | 110 | 115 | 120 | 125 | 130 |
|---|---|---|---|---|---|---|---|

"Adjusted" Laffey Matrix

| Year | Paralegal/ Law Clerk | EXPERIENCE | | | | |
|---|---|---|---|---|---|---|
| | | 1 to 3 Years | 4 to 7 Years | 8-10 Years | 11-19 Years | 20 + Years |
| 6/01/10- 5/31/11 | $161 | $294 | S361 | $522 | $589 | $709 |
| 6/01/09- 5/31/10 | $155 | $285 | S349 | $505 | $569 | $686 |
| 6/01/08- 5/31/09 | $152 | $279 | $342 | $494 | $557 | $671 |
| 6/01/07-5/31/08 | $146 | $268 | $329 | $475 | $536 | $645 |
| 6/01/06-5/31/07 | $139 | $255 | S313 | $452 | $509 | $614 |
| 6/1/05-5/31/06 | $136 | $249 | S305 | $441 | $497 | $598 |
| 6/1/04-5/31/05 | $130 | $239 | S293 | $423 | $476 | $574 |

The Fourth Circuit, in *Grissom v. The Mills Corp.*, 549 F.3d 313 (4th Cir. 2008), looked to the Unadjusted Laffey Matrix in evaluating fees in the Northern Virginia area and recognized that although the Matrix has been considered a "useful starting point" by some courts in evaluating fee requests, it is ultimately "insufficient to carry [the moving party's] burden of proof" on its own. *Id.* at 323.[10] Rather, the *Grissom* court adjusted the applicable market rates as indicated in the table provided below:

---

[10] Furthermore, reliance on the Laffey Matrix is also constrained by the fact that, as recognized above, hourly rates charged in Washington, D.C. are usually higher than those rates charged in this District. *Jackson*, 2009 WL 1321506 at *3.

| Title | Years of Experience | Hourly Rate |
|---|---|---|
| Partner | 18-19+ | $335.00-$380.00 |
| Associate | 6-7 | $250.00 |
| Associate | 5-6 | $250.00 |
| Associate | 2-3 | $200.00 |
| Associate | 1 | $180.00 |

*Id.* at 323 (hereafter the "Grissom Table").

As this Court recently noted, *Grissom* provides a useful benchmark for determining the appropriate fee as it is a recent Fourth Circuit decision (2008) involving complex civil litigation and reputable attorneys practicing in the Northern Virginia market. *U.S. ex rel. UBL v. IIF Data Solutions*, 2010 WL 1726767 (E.D. Va. April 28, 2010). Looking at the Grissom table, the Court finds that Mr. Ates' requested rates of $400 and $420 per hours are above market rate for his 16-17 years of experience. Instead, taking into account the fact that the Grissom Table was created two years ago, the Court finds that Mr. Ates should be compensated at the rate of $380 per hour for his work throughout the case.

(6)/(10) <u>The attorney's expectations at the outset of the litigation/the undesirability of the case</u>:

The Court will apply *Johnson* factors 6 and 10 together. *See Superior Form Builders v. Dan Chase Taxidermy Supply Co.*, 881 F. Supp. 1021, 1027 (E.D. Va. 1994). The Court finds that there is nothing in the record to suggest that this was an undesirable case, and Plaintiff has

not asserted such. That said, ALF took this case on a contingency basis which may have made it less desirable than it otherwise would have been. When a case in taken on a contingency basis, there is always a possibility that the attorneys will receive no compensation at all. For that reason, this court has held that contingency arrangements favor awarding plaintiff's attorneys the requested value of their services because, under such arrangements, the attorney accepts the case with the possibility that they would not receive compensation. *Id.* This factor, therefore, supports the awarding of the fees requested by Plaintiff, as adjusted.

(7) The time limitations imposed by the client or circumstances:

The record contains no evidence that ALF was under abnormal time limitations beyond those typically imposed in the Eastern District of Virginia. There is nothing in the record to indicate that there was anything exceptional about client demands or the circumstances of this case which bear significant relevance under this factor. Thus, this factor provides no additional guidance regarding the reasonableness of an award of attorneys' fees.

(8) The amount in controversy and the results obtained:

The United States Supreme Court and the Fourth Circuit have explained that although the degree of a party's success is "the most critical factor" in determining a reasonable fee award, a court's analysis of that factor should not be limited to a "purely mathematical comparison between the number of claims pressed and the number prevailed upon." *Brodziak v. Runyon*, 145 F.3d 194, 196-97 (4th Cir. 1998) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)). In some cases, the Court is to consider a reduction of the fees awarded based upon the degree of success obtained in the litigation and should reduce an award to account for any unsuccessful

claims. *See Lilienthal v. City of Suffolk*, 322 F. Supp. 2d 667, 675 (E.D. Va. 2004). However, where a lawsuit, as this one, involves a common core of facts, the Supreme Court has explained that "[s]uch a lawsuit cannot be viewed as a series of discrete claims" and that a district court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435; accord *Brodziak*, 145 F.3d at 196.

In the present case all of Plaintiff's claims arose from a common set of facts even though there were five discrete claims alleged. This is not a case, therefore, in which "counsel's work on one claim [was] unrelated to his work on another claim." *Hensley*, 461 U.S. at 434-35. Further, any work done by Plaintiff's counsel specifically on the Title VII and state law retaliation/wrongful discharge claims has been segregated out and is not included in the attorneys' fees amount requested. The remainder of the time spent by ALF on the case was related to the successful prosecution of the gender discrimination claim and ERISA Section 510 retaliation claim. Overall, Plaintiff succeeded on all of the substantive issues in the case. These factors therefore support a finding that the fees requested by Plaintiff are reasonable.

(9) The experience, reputation and ability of the attorney

As mentioned above, Mr. Ates has more than 17 years of experience as a trial and appellate attorney in the areas of discrimination and employment law. He was formally a partner at the international law firm of Winston & Strawn LLP and now is the sole shareholder of ALF which specializes in civil rights and employment law. He has argued before the Supreme Court in cases involving ERISA issues on more than one occasion, most recently in *Hardt v. Reliance*

*Standard Life Insurance Co.*, 130 S. Ct. 2149 (2010). This experience supports a finding that rates charged by Mr. Ates, as adjusted, are reasonable.

(11) The nature and length of the professional relationship between attorney and client:

There is nothing in the record that indicates that there was a prior professional relationship between Ms. Porter and ALF. As such, this factor provides no additional guidance regarding the reasonableness of an award of attorneys' fees.

(12) Attorney awards in similar cases:

Plaintiff cites *U.S. ex rel Vuyyuru v. Jadhav*, 2007 WL 2471087 (E.D. Va. August 27, 2007), *aff'd* 555 F.3d 337 (4th Cir. 2009) for the proposition that $400 per hour is reasonable for attorneys of similar vintage as Mr. Ates. The Court finds a couple of issues, however, with using *Jadhav* as the benchmark for determining the appropriate fees in the current case. First, the reasonableness of the $400 fee charged by Shebelskie is never discussed in the district court's opinion in *Jahva*. That hourly rate was apparently uncontested, *id.* at *2, so the district court never addressed it. More importantly, the case does not mention how many years of experience Shebelskie had, so there is no way to accurately compare his fees to those of Mr. Ates. Similarly, the Fourth Circuit never mentions Shebelskie's rate either. *U.S. ex rel Vuyyuru v. Jadhav*, 555 F.3d 337 (4th Cir. 2009). The only individual whose billing rate is discussed in the Fourth Circuit's opinion is Rita Davis whose rate was $310 per hour. *Id.* at 356. Additionally, while *Jadhav* was decided in the Eastern District of Virginia, it was decided in the Richmond division. As noted previously, the relevant market for determining the appropriate prevailing rate for fees is the "community in which the court where the action is prosecuted sits," *Rum*

*Standard Life Insurance Co.*, 130 S. Ct. 2149 (2010). This experience supports a finding that rates charged by Mr. Ates, as adjusted, are reasonable.

(11) The nature and length of the professional relationship between attorney and client:

There is nothing in the record that indicates that there was a prior professional relationship between Ms. Porter and ALF. As such, this factor provides no additional guidance regarding the reasonableness of an award of attorneys' fees.

(12) Attorney awards in similar cases:

Plaintiff cites *U.S. ex rel Vuyyuru v. Jadhav*, 2007 WL 2471087 (E.D. Va. August 27, 2007), *aff'd* 555 F.3d 337 (4th Cir. 2009) for the proposition that $400 per hour is reasonable for attorneys of similar vintage as Mr. Ates. The Court finds a couple of issues, however, with using *Jadhav* as the benchmark for determining the appropriate fees in the current case. First, the reasonableness of the $400 fee charged by Shebelskie is never discussed in the district court's opinion in *Jahva*. That hourly rate was apparently uncontested, *id.* at *2, so the district court never addressed it. More importantly, the case does not mention how many years of experience Shebelskie had, so there is no way to accurately compare his fees to those of Mr. Ates. Similarly, the Fourth Circuit never mentions Shebelskie's rate either. *U.S. ex rel Vuyyuru v. Jadhav*, 555 F.3d 337 (4th Cir. 2009). The only individual whose billing rate is discussed in the Fourth Circuit's opinion is Rita Davis whose rate was $310 per hour. *Id.* at 356. Additionally, while *Jadhav* was decided in the Eastern District of Virginia, it was decided in the Richmond division. As noted previously, the relevant market for determining the appropriate prevailing rate for fees is the "community in which the court where the action is prosecuted sits," *Rum*

*Creek*, 31 F. 3d at 175. Richmond is 100 miles from Alexandria. In comparison, Washington, DC is a mere stone's throw from Alexandria, and the courts have held Washington, DC rates should not be used as a baseline for determining the appropriate billing rates in Northern Virginia. *Jackson*, 2009 WL 1321506 at *3 (citing *Am. Canoe Ass'n v. EPA*, 138 F.Supp.2d 722, 740-42 (E.D. Va.2001)). As such, the Court does not find it necessary to adopt precisely Mr. Ates' request for $400 per hour (for fees prior to October 1, 2009) and $420 per hour (for fees after October 1, 2009). That being said, the fact that the Fourth Circuit affirmed the $310 per hour and $400 per hour rates in *Jadhav* gives confirmation to this Court of the reasonableness of the fees that the Court has found appropriate to award in the instant case. *See also Quantum Sys. Integrators, Inc. v. Sprint Nextel Corp.* 2009 WL 3423848, at *5 (E.D. Va. October 16, 2009)(finding rate of $300 per hour reasonable for attorneys with fourteen to twenty-eight years of experience); *Alford v. Martin & Gass, Inc.*, 2009 WL 2447936, at *4 (E.D. Va. August 3, 2009 (awarding fees at range of $60-$350 per hour); *Jackson*, 2009 WL 1321506, at *3 (awarding rates of $350 per hour for partners with between eleven and nineteen years experience; $170 for an associate with one to three years of experience; and $60 for a legal assistant); *Burns v. Anderson*, 2006 WL 2456372, at *9 (E.D. Va. August 22, 2006)(prevailing party sought rates ranging from $664 to $695 per hour for partners in major firm which the court reduced to $265 to $278 per hour).

Balancing:

Reviewing the Court's analysis above of the *Johnson* factors, numbers 1-5, 8-10, and 12 support the reasonableness of the fee award here, while factors 7 and 11 provide no additional support. However, as discussed, factor 5 supports a reduction of the hourly rate awarded to Mr.

Ates, as the rates proffered exceed the customary fees in this jurisdiction. In sum, consideration

of the *Johnson* factors supports the reasonableness of the fee award here, as adjusted.


*ii. Lodestar figure*

Guided by the *Johnson* factors, the Court must now determine how many hours were

reasonably spent on the litigation and the rate at which that work should be compensated. *See*

*McDonnell v. Miller Oil Co.,* 134 F.3d 638, 640 (4th Cir.1998). On that basis, the court can

determine a lodestar figure by multiplying the number of reasonable hours expended times a

reasonable rate. *Id.*

As discussed in factor 5, the Court finds that Mr. Ates should be compensated at $380 per

hour. The remaining question is the number of hours which were reasonably spent on the

litigation. Mr. Ates asserted in his declaration that ALF spent a total of 310.31 hours prosecuting

the case. To support the number of hours asserted, Plaintiff attached to Ates' declaration a fee

sheet which lists by date the work done by ALF on the case and the time spent on those tasks. In

addition, Plaintiff has color coded the various tasks as either being work related to general

litigation, the Motion for Sanctions,[11] or the counts which were dismissed at summary judgment.

While initially there was some dispute between the parties as to the proper division of the hours,

as between those that should be considered related to the sanctions and those dedicated to

general litigation, the parties have since agreed that 201.77 hours will be considered general

---

[11] In an order dated July 1, 2007, the Court granted Plaintiff's Motion for Sanctions and instructed Plaintiff to submit fees and costs so that the Court could award the appropriate relief. Plaintiff submitted a Declaration in Support of Award of Sanctions on July 2, 2010. Defendant objected to the Declaration on two grounds. First, he argued that Plaintiff had not sufficiently supported the reasonableness of the fees requested. Second, he felt that some of the fees requested were not associated specifically with the sanctionable offenses. As to the first issue, having now submitted his Motion for Attorneys' Fees, Plaintiff has provided sufficient information for the Court to determine the reasonableness of the fees requested. As to the second issue, the parties have since agreed on which hours will be considered general litigation fees (201.77 hours) and which hours will be allocated toward the sanctions issue (87.21 hours).

litigation fees, and 87.21 hours will be allocated for sanctions fees. The remaining 21.33 hours

have been excluded entirely because they were spent on the Title VII and state law

retaliation/wrongful discharge claims which were dismissed. The Court has carefully reviewed

the documentation submitted by Plaintiff as to the hours spent on the litigation and finds that

hours spent on the various tasks are reasonable. The following table provides a summary of the

reasonable hours billed at the rate established above:

| Type of Fees | Hours Worked[12] | Rate | Total |
|---|---|---|---|
| General litigation | 201.77 | $380/hour | $76,672.60 |
| Sanctions | 87.21 | $380/hour | $33,139.80 |
| | | | TOTAL: $109,812.40 |

c.     **Expenses**

Under Fed. R. Civ. P. 54(d), "costs . . . should be allowed to the prevailing party." The

court has wide latitude to award costs, so long as the costs are enumerated in the general

taxation-of-costs statute, 12 U.S.C. § 1920.[13] *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482

U.S. 437, 442 (1987). Additionally 29 U.S.C. § 1132(g)(1) states that at the termination of an

ERISA case, "the court in its discretion may allow a reasonable . . . costs of action to either

party." In construing these standards together, the Court finds that 29 U.S.C. § 1132(g)(1)

allows the court to award costs recoverable under 28 U.S.C. § 1920. *O'Bryhim v. Reliance*

*Standard Life Ins. Co.*, 997 F. Supp. 728, 737 (E.D. Va. 1998).

---

[12]   This excludes the hours worked on the Title VII and state law retaliation/wrongful discharge claim.

[13] 28 U.S.C. § 1920 specifies the following as costs that the a court may tax: (1) Fees of the clerk and marshal; (2) Fees of the court reporter for all of any part of the stenographic transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and copies of papers necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Since Defendant conceded liability in favor of Plaintiff, Plaintiff was clearly the prevailing party. Defendant has not contested any of the expenses sought by Plaintiff. Cases in this district are split on the issue of whether fees for private process servers should be taxed as costs. *See Cofield v. Crumpler*, 179 F.R.D. 510 (E.D. Va. 1998) (holding that fees for the service of summons and subpoenas are not taxable where a private process server is used to deliver the summons or subpoenas." *Id.* at 515; *D&B Countryside, LLC v. Newell*, 217 B.R. 72, 77-78 (Bankr. E.D. Va. 1998) ("[T]his court believes that the better reasoned approach – and the position the Fourth Circuit would adopt – would be that private process server fees are not costs that may be taxed under § 1920(1)."). *But see O'Bryhim v. Reliance Standard Life Ins. Co.*, 997 F. Supp. 728 (E.D. Va. 1998) (holding that costs incurred for a private process server are allowable as costs under 28 U.S.C. § 1920). *Id.* at 738. The Fourth Circuit has not ruled on this issue; however, upon examination of the case law, the Court finds that the weight of the cases in this district, as well as the one which has most recently addressed the issue, *Synergistic International, LLC v. Korman*, 2007 WL 517676, at *2 (E.D. Va. Feb. 8, 2007), hold that private process server fees are not taxable under 28 U.S.C. § 1920. The Court's Taxation of Costs Guidelines also explicitly lists "private process server fees" as not taxable. Further, language of the subsection is clear in stating that only fees for a marshal can be taxed, and therefore the statute must be applied as written. *D&B Countryside*, 217 B.R. at 77-78. As such, the Court finds that private process server fees are not allowable costs under 28 U.S.C. § 1920. The total, therefore for expenses associated with general litigation is $523.21 ($1,228.21-$705.00), and the total for expenses associated with the sanctions motion is $5,297.28 ($5,897.28-$600). As such, the total awarded for expenses is $5,820.49.

## III. Conclusion

For the foregoing reasons, the Court hereby awards Plaintiff $76,672.60 in general litigation attorneys' fees and $33,139.80 in fees associated with the sanctions motion. Further, the Court awards Plaintiff $523.21 in general litigation expenses and $5,297.28 in expenses for the sanctions motion.

Alexandria, Virginia
August 27, 2010

/s/

Liam O'Grady
United States District Judge